[Cite as *Regulic v. Columbus*, 2022-Ohio-1034.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


Slobodan Regulic et al.,                      :

        Plaintiffs-Relators/                  :
        Appellants,                               No.  21AP-268
                                             :      (C.P.C. No. 20CV-3396)

v.
                                             :      (ACCELERATED CALENDAR)

City of Columbus et al.,
                                             :

        Defendants-Respondents/
        Appellees.                            :

---

D E C I S I O N

Rendered on  March 29, 2022

---

**On brief**: *O'Reilly Law Offices*, and *Michael J. O'Reilly*, for
appellants.  **Argued**: *Michael J. O'Reilly*.

**On brief**: *Zach Klein*, City Attorney, *Alana V. Tanoury*, and
*Sheena D. Rosenberg*, for appellees. **Argued**: *Alana V.
Tanoury*.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1}   Under the law of Ohio, as elsewhere, governmental action alleged to cause
flooding of private property may be immune to negligence claims while still subjecting the
governmental entity to the possibility of takings compensation proceedings.

{¶ 2}   Plaintiffs/Relators-Appellants Slobodan and Milka Regulic sued the City of
Columbus (and its Mayor as "named in a representative capacity only," so together
"Columbus" or "the city") on May 27, 2020 complaining that a home they purchased in the

city in 2001 has flooded "about twice per year" since that time. Complaint at ¶ 1, 2, 6 and Ex. A (2001 date); *see also* Complaint at ¶ 21 ("From time to time over the years, including in 2004, 2005, 2006, 2014, 2016, 2017, February and May 2018, May 2019, and March and May 2020, [the Regulics] have suffered basement and kitchen floods and sewage backups"). They attributed the flooding primarily to city negligence at or before the time of their purchase, including "(a) [housing development] plan review, (b) permit issuances, (c) construction inspection, (d) issuance of completion certificates, [and] (e) acceptance of maintenance from the developer without appropriate collection on subdivision bond," as well as to unspecified problems with "operation and maintenance of the Subdivision's storm and sanitary sewer systems." Complaint at Count I, ¶ 30 (for negligence).

{¶ 3} Beyond their negligence claim and their related request for money damages, the Regulics also alleged that city "acts and omissions that result in the actual and repeated overflow of sewage onto the[ir] [p]roperty" and that "reasonably may be expected" to give rise to "[f]urther overflow of sewage" constitute an uncompensated taking of their property entitling them to a writ of mandamus to compel the city to begin property appropriation proceedings pursuant to R.C. 163.01 et seq. *Id.* at Count II, ¶ 34, 36 (for mandamus). They further asked to be designated "if they shall so move" as representatives of a class of subdivision homeowners. *Id.* at Count III.

{¶ 4} Columbus filed an answer to the complaint on September 8, 2020 and an amended answer on October 27, 2020. Then, on November 2, 2020, Columbus filed a motion for judgment on the pleadings. The trial court granted that motion by a Decision of March 24, 2021.

{¶ 5} Columbus was entitled to judgment on the Regulics' negligence claim for two reasons, the trial court found. First, pursuant to R.C. 2744.02(A)(1) and (2), the city is immune from liability for damages to persons or property caused in connection with "governmental" as opposed to "proprietary" functions, and the negligent conduct alleged in the complaint fell within Columbus's exercise of its "governmental" responsibilities. *See* Decision Granting MJP at 3-7, citing to R.C. 2744.01(C)(2)(p) (inspections and actions undertaken in connection with building, zoning, sanitation, and plumbing codes, the approval of building construction plans, and the issuance or revocation of building permits are "governmental function[s]"; R.C. 2744.01(C)(2)(l) (so is "[t]he provision or

nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system"); R.C. 1311.25(A) (defining a "[p]ublic improvement" as "any construction, * * * alteration, demolition, or repair of a * * * drainage system, water system, * * * sewer, ditch, sewage disposal plant, water works," and the like); and to *Coleman v. Portage Cty. Eng.*, 133 Ohio St.3d 28, 2012-Ohio-3881, ¶ 30-31 (for the proposition that despite generic reference to sewer maintenance or operation issues, which generally would involve proprietary functions, a complaint invokes "a design or construction issue" to which immunity attaches as a governmental function if fixing the problem would require the government to redesign or rebuild the system).

{¶ 6} "Here," the trial court observed, immunity applied because the Regulics' "Complaint makes no allegations regarding Defendant City's day-to-day maintenance, inspection, repair, or removal of obstructions in the sewer system, and instead relates to Defendant City's design and construction of the storm and sanitary systems in the Subdivision, the actual construction of Plaintiffs' home in a flood zone, and the installation and subsequent removal of a holding tank, which purportedly caused an increase in the severity of the flooding. * * * * As such [sic], * * * because Plaintiffs' claims are actually based on alleged failures in the design, construction, or update of the sewer system * * *, and are not based on the general maintenance of the sewer system, [Columbus] was participating in a governmental, not [a] proprietary function. * * * * As such [sic], * * * [Columbus] is entitled to a general grant of immunity" and to "judgment in [its] favor as a matter of law on Plaintiffs' negligence claims."  Decision Granting MJP at 6-7.

{¶ 7} Second and alternatively, the trial court found, the Regulics' negligence claim is barred by the two-year statute of limitations that applies to actions against political subdivisions for damages to persons or property caused in connection with a governmental or proprietary function.  *Id.* at 8-9, citing R.C. 2744.04(A).  The Regulics "allege that their home was built in 1999, that they purchased their home in 2001, and that they began having flooding problems as early as 2001, and at the latest 2004.  * * * * However, [they] did not file their Complaint until May of 2020," the trial court observed.  *Id.* at 8.  "[T]he alleged wrongful act was committed in 1999 when Plaintiffs' home was built and Defendants negligently [according to the Complaint] issued permits, approved plans, and inspected construction completed by the developer.  * * * * [The Regulics'] cause of action accrued

when Plaintiffs discovered that they were injured by the alleged wrongful conduct * * *, which was when the first incident of flooding occurred, either 2001 or 2004. * * * *  In addition, the [trial] Court finds that a continuing tort theory does not apply because Plaintiffs' Complaint does not sufficiently allege continuing acts of negligence, only continuing damages." *Id.* at 9.

{¶ 8}  As to mandamus, the trial court acknowledged that the writ " 'is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.' " *Id.* at 10, quoting *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 53 (further citation omitted). Pursuant to R.C. 2305.09(E), the trial court continued, an action for relief based on physical or regulatory taking of property generally must be brought within four years from when the cause accrued.  *Id.* at 10, citing *Doner* at ¶ 34 (further citation omitted).  Beyond the initial permitting issues, the trial court recited, the Regulics "further allege that [Columbus] negligently installed and subsequently removed a holding tank in 2010, which purportedly caused an increase in the severity of the flooding."   *Id.* at 11, citing Complaint at ¶ 23-24. With the Regulics having alleged that they experienced flooding in "2004, 2005, 2006, 2014, 2016, 2017, February and May 2018, May 2019, and March and May 2020," the trial court ruled that the four-year limitations statute precluded their mandamus claim. Contrary to the Regulics' argument, the trial court found, the "Complaint does not sufficiently allege any facts regarding any ongoing conduct or control on behalf of [Columbus], and instead only alleges that there have been continuing or ongoing damages." *Id.* at 11.

{¶ 9}  The trial court granted Columbus's motion for judgment on the pleadings and instructed the city's lawyers to "submit the appropriate judgment entry." *Id.* at 12.

{¶ 10}  After that decision, but before the trial court entered judgment, the Regulics moved for leave to amend their complaint.  March 31, 2021 Motion for Leave to File an Amended Complaint, and for a Stay.  The motion gave only a one sentence explanation of its grounds: "Plaintiffs request leave to amend, to allow the Court and opposing counsel to have a clearer reading of the Complaint, and thereby protect the interests of justice and fairness." *Id.* at 2.  The proposed amendment recast the claimed negligence to move away from allegations involving permitting events that occurred before the Regulics bought the

property and focused the negligence count on unspecified but assumed negligent sewer maintenance and operation. *Id.* at ¶ 26 of proposed amendment (complaining of "flooding * * * the type of which that [sic] does not happen in the absence of the City's negligent maintenance"). It would have dropped the mandamus count and added others.

{¶ 11} On April 26, 2021, the trial court filed a Decision and Entry denying the motion for leave to amend. That decision found that the amendment would not correct the deficiencies of the original complaint, and observed that the negligence claim still identified no particular sewer maintenance or operation issue and that the Regulics still were alleging "that the Subdivision's sewer system has design or/and or [sic] construction issues, *not* maintenance issues." April 26, 2021 Decision & Entry denying amendment at 2 (emphasis in original); *id.* at 3 ("Plaintiffs' allegations relate to Defendants' approval of the design and construction of Plaintiffs' home * * * * [and] on Plaintiffs' allegations, Defendants would need to redesign, reconstruct, or update the sewer systems"). Further, the trial court ruled that "the Court cannot allow Plaintiffs to try and 'change' the facts to evade dismissal." *Id.* at 4. Two days later, the trial court issued a Judgment Entry predicated on the grant of the motion for judgment on the pleadings and reciting that "this case is dismissed with prejudice * * *." (A virtually identical "Judgment Entry" from April 9, 2021 also appears in the record, apparently simply as an exhibit to Columbus's response to the Regulics' motion for leave to amend; it was not signed at that point by the trial judge, who appended her signature under "It Is So Ordered" language to the April 28, 2021 judgment entry.)

{¶ 12} The Regulics filed their notice of appeal on May 26, 2021, appealing both the grant of Columbus's motion for judgment on the pleadings and the denial of their own motion for leave to amend their complaint (both of which decisions became final and appealable with the April 28, 2021 Judgment Entry dismissing their case with prejudice). In their brief to us, they advance four assignments of error:

> [I.] Where the Defendants' motion for judgment on the pleadings under Civil Rule 12(C) contained significant argument that sounded only under Civil Rule 12(B)(6), it was error for the court to ground its dismissal entirely under Civil Rule 12(C).
>
> [II.] The trial court abused its discretion in deciding it was already proved that the City had committed no negligence in a

> proprietary function within two years of the filing of the complaint.
>
> [III.] The court abused its discretion in denying plaintiffs leave to amend their complaint.
>
> [IV.] The trial court erred in ignoring the continuing taking doctrine in granting judgment on the pleadings based on the statute of limitations as to the second count in the case, for mandamus to commence an eminent domain proceeding.

Appellants' Brief at 2-3 (emphasis omitted and capitalizations adjusted).

{¶ 13} We begin with the third assignment because a finding that the trial court's dismissal was directed to the wrong complaint would moot the rest of the appeal. But it wasn't: the trial court did not abuse its discretion in denying the motion for leave. Indeed, the Regulics' one-paragraph argument in support of this assignment of error underscores that "it was over four months" between the time that Columbus filed its motion for judgment on the pleadings and the time the trial court decided that motion. Appellants' Brief at 17. The Regulics did not amend their complaint as of right within the time permitted by Civil Rule 15(A) (even though, as the Regulics observe, "Defendants took over three months to file their first answer," Appellants' Brief at 17). The Regulics did not move for leave to amend during the five-plus months between the time they filed their complaint and the time Columbus moved for judgment on the pleadings. And, as they concede, they did not move to amend during the almost five months between the filing of the motion for judgment on the pleadings and the trial court's detailed decision granting that motion.

{¶ 14} The Regulics' lone argument in support of this assignment of error — that "absolutely none of the ten months [between the filing of the complaint and the grant of the motion for judgment on the pleadings] was caused by [them]," Appellants' Brief at 17 — does not explain why the trial court's work on the motion for judgment on the pleadings in the context of the unamended complaint should be set at naught and party briefing on the negligence issues begun anew, or why justice would require otherwise. On the facts of this case, and while recognizing that leave to amend is to be liberally granted absent bad faith or undue delay or prejudice, we cannot say that the trial court abused its discretion in not finding that the interests of justice required the leave to be granted. *See*, *e.g.*, *Fisk v. Rauser & Assocs. Legal Clinic Co., LLC*, 10th Dist. No. 10AP-427, 2011-Ohio-5465, ¶ 13-15, citing

*Wilmington Steel Prods., Inc. v. Cleveland Elec. Illuminating Co.,* 60 Ohio St.3d 120, 122 (1991) ("The grant or denial of a motion for leave to amend a pleading lies within the sound discretion of the trial court, and upon appeal we will not reverse the trial court's determination absent an abuse of that discretion"); *Fisk* at ¶ 15 (trial court justified in concluding that attempt to "reinvent the case on entirely separate alternative legal grounds" so as to avoid summary judgment was "prejudicial to opposing parties and constituted inefficient use of the judicial system's time and resources").

{¶ 15}   Further still, the balance of the Regulics' briefing and statements of their counsel at argument here lead us to understand that they *do* wish to pursue their request for mandamus — a request not renewed in their proposed amended complaint.  And they make no attempt here to contest the trial court's finding that the frequently conclusory allegations of the proposed amended complaint would not save their negligence claim or support new ones.  We overrule the Regulics' third assignment of error.

{¶ 16} We turn to the Regulics' first assignment of error.  To the (seemingly large) extent that it argues that the trial court should not have considered Columbus's motion for judgment on the pleadings as being such pursuant to Civil Rule 12(C), but rather should have construed it as a motion to dismiss for failure to state a claim under Rule 12(B)(6), we do not really understand the point.  The Regulics do not base this assignment on an argument that the pleadings were not closed at the time the motion was made.  And they advanced no Rule 12(B)(6) theory (whatever it is intended to be) to the trial court in opposing the motion.  *See* December 14, 2020 Memorandum Contra of Plaintiffs to Defendants' Motion for Judgment on the Pleadings.

{¶ 17} The standard applied by the trial court in assessing the motion for judgment on the pleadings required it to " 'construe[] the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true' " and then to ascertain whether " 'the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.' "  March 24, 2021 Decision granting motion at 2, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). That is the same standard that would have governed the trial court in assessing a Civil Rule 12(B)(6) motion made before an answer had been filed.  *See, e.g., Morrissette v. DFS Servs., LLC*, 10th Dist. No. 10AP-633, 2011-Ohio-2369, ¶ 9 (citations omitted) (in ruling on a

12(B)(6) motion, court must presume all of complaint's factual allegations to be true, draw all favorable inferences in favor of nonmoving party, and then determine whether it appears beyond doubt from the complaint that plaintiff can adduce no facts that would entitle him to recovery). And because a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim each turns on whether a complaint fails on its face as a matter of law, we review grants of each de novo (afresh, with no deference to the trial court's determination). *Compare, e.g., Chen v. Shie-Ming Hwang*, 10th Dist. No. 14AP-535, 2014-Ohio-5863, ¶ 17 (motion for judgment on the pleadings), *with Morrissette* (motion to dismiss for failure to state a claim).

{¶ 18} As we have observed before: "A motion for judgment on the pleadings is essentially a motion to dismiss for failure to state a claim after an answer has been filed." *RotoSolutions, Inc. v. Crane Plastics Siding, LLC*, 10th Dist. No. 13AP-1, 2013-Ohio-4343, ¶ 15, citing *Gawloski v. Miller Brewing Co.*, 96 Ohio App.3d 160, 163 (9th Dist.1994); *see also, e.g., Rushford v. Caines*, 10th Dist. No. 00AP-1072, 2001 Ohio App. Lexis 1512, *5 (Mar. 30, 2001) ("A Civ.R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion to dismiss, and the same standard of review is applied, both at the trial and appellate levels") (citations omitted); 1 Baldwin's *Ohio Civil Practice*, Section 12:10, 884-85 (2021-22 ed.) (reiterating that a "Civ.R. 12(C) motion is, in effect, a 'belated' substitute for a Civ.R. 12(B) motion," and a Civ.R. 12(B) motion may be reasserted through a 12(C) motion after answer). The Regulics appear to have become entangled in one court's (quite proper) application of Civ.R. 12(C) to a case in which a defendant's answer gave rise to a motion because it admitted liability, but the standard articulated there is nothing different. *See* Appellants' Brief at 13, citing *Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, ¶ 18 (7th Dist.). The distinction that the Regulics attempt to draw in their first assignment of error is unavailing.

{¶ 19} Having filed answers earlier to the Regulics' complaint, Columbus moved for judgment on the pleadings pursuant to Civil Rule 12(C). The Regulics do not argue to us that the trial court erred in the substance of its determination that Columbus is shielded by governmental immunity as to any negligence claim supported by the facts specified in the complaint (including matters involving the holding tank). Nor do the Regulics attempt any argument under their first assignment that the trial court erred in its alternative holding

that the two-year statute of limitations would bar such (specified) claims in any event. Understandably, they cite no authority for the assignment's proposition that the Rule 12(C) motion should not have been decided as a 12(C) motion. The trial court was obliged to decide the motion; it did not err by addressing that motion on its own terms.

{¶ 20} Rather, the Regulics seem to object here to not having been able to use their complaint as a placeholder for some future, as yet undiscovered negligence claim. *See*, *e.g.*, Appellants' Brief at 13 (contending that "the trial court * * * too easily discounted averments that there had been [unspecified] negligence in a proprietary function"). They refine their point to some extent in their second assignment of error, under which they all but concede that their complaint does not identify "what type of negligence led to any particular incident during a lengthy timeline." *See id.* at 15; *compare id.* at 16 (arguing that trial court overlooked "possibility" that currently unspecified negligence in a proprietary function could be identified to surmount immunity and statute of limitations barriers, thus again in their view demonstrating the sort of "mistakes that can arise when 12(B)(6) and 12(C) analyses are mashed together"); *id.* at 15 (arguing under second assignment that they should be permitted to show that the city was negligent in some unnamed "proprietary act or omission * * * in 2019 or 2020").

{¶ 21} The General Assembly explicitly has provided municipalities with (defined and somewhat circumscribed) immunity in the performance of governmental functions and has established reasonably short limitations periods to constrain negligence claims with regard to proprietary functions. *See* R.C. 2744.02 and 2744.04. And the Supreme Court of Ohio has been clear that even "creative" (let alone, we conclude, entirely amorphous or conclusory) pleading cannot transform what truly are claims involving governmental functions into claims of proprietary negligence that would bypass the litigation short-circuiting that immunity is designed to provide. *See Coleman*, 2012-Ohio-3881 at ¶ 30 ("complaint presents a [governmental function] design or construction issue" if remedying the identified problem would require reconstruction or redesign), ¶ 31 (disallowing "creative" attempt to mask claim). The Regulics do not contest the trial court's finding that to the extent they articulated any factual alleged wrongdoing by Columbus, they complained about governmental and not proprietary functions. And refusal to make out any claim at all will not succeed where disguise would fail.

**{¶ 22}** The Regulics fix on subparagraph 30(f) of their Complaint, which baldly asserted "negligence on matters of * * * (f) operation and maintenance of the Subdivision's storm and sanitary sewer systems." *See* Appellants' Brief at 15. In that regard, just as in *Amrhein v. Telb*, 6th Dist. No. L-06-1170, 2006-Ohio-5107, ¶ 16, the "complaint consists of nothing more than unilateral legal conclusions framed as allegations. The * * * complaint is devoid of factual allegations of recoverable conduct. The appellant[s] simply present[] the outcome itself as evidence of malfeasance. That does not suffice to survive a Civ.R. 12(C) motion."

**{¶ 23}** *Amrhein* underscores that "[i]t is well established that a trial court's approach in reviewing a Civ.R. 12(C) motion for judgment on the pleadings is substantively analogous to the approach taken on [a] Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted. The same standard of review is applied equally to both types of motions." *Id.* at ¶ 10 (citation omitted). Columbus appropriately cites to *Kanu v. Univ. of Cincinnati*, 10th Dist. No. 18AP-517, 2018-Ohio-4969, ¶ 10, where in affirming a Rule 12(B)(6) dismissal for failure to state a claim we recited that "the court need not accept as true any unsupported and conclusory legal propositions advanced in the complaint." As we emphasized there, " '[t]o constitute fair notice [so as to state a claim] the complaint must still allege sufficient underlying facts that relate to and support the alleged claim.' " *Id.* at ¶ 10 (citations omitted); *see also*, *e.g.*, *Habibi v. Univ. of Toledo*, 10th Dist. No. 19AP-583, 2020-Ohio-766, ¶ 13 (quoting *Kanu* in noting that legal conclusions do not suffice to state a claim); *Stainbrook v. Ohio Secy. of State*, 10th Dist. No. 16AP-314, 2017-Ohio-1526, ¶ 11, citing *Haas v. Stryker*, 6th Dist. No. WM-12-004, 2013-Ohio-2476, ¶ 10 (another 12(B)(6) case, noting that "only claims supported by factual allegations can avoid dismissal"); *Tuleta v. Med. Mut. of Ohio*, 8th Dist. No. 100050, 2014-Ohio-396, ¶ 12, quoting *Grossniklaus v. Waltman,* 5th Dist. No. 09CA15, 2010-Ohio-2937, ¶ 26 ("complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions"); *Scott v. Columbus Dept. of Pub. Util.*, 192 Ohio App.3d 465, 2011-Ohio-677, ¶ 8 (10th Dist.) (case cited to trial court by Regulics notes that a complaint must allege, as complaint there did, "a set of facts that, if proven," would permit recovery); *compare Columbus v. Sanders*, 5th Dist. No. 11 CAE 05 0047, 2012-Ohio-1514, ¶ 10-11 (discussing standard of review for judgment on the pleadings, court notes that "the

complaint must allege sufficient facts to support any conclusions, and unsupported conclusions are not presumed to be true"; a "[j]udgment on the pleadings may be granted where no material factual issue exists" and is "restricted solely to the allegations contained in those pleadings").

{¶ 24} We overrule the Regulics' first and second assignments of error. Although it will come as no solace to the Regulics, we observe that had the governmental immunity issue been joined earlier, in the context of a motion to dismiss pursuant to Civil Rule 12(B)(6) before the pleadings were closed, the dismissal of those negligence claims would have been with prejudice also (as would be true with the claims that the trial court further identified as failing under the alternative, statute of limitations ruling). Indeed, such claims would have failed any way they were formulated. *See, e.g., Schmidt v. Grossman Law Office*, 10th Dist. No. 14AP-127, 2014-Ohio-4227, ¶ 9-10 (judgment on the pleadings as based on immunity was "unquestionably * * * on the merits" and therefore with prejudice); *compare Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, ¶ 17 (under Civ.R. 12(B)(6), claim will be deemed adjudicated on the merits only if it can be pleaded in no other way); *State ex rel. Arcadia Acres v. Dept. of Job & Family Servs.*, 123 Ohio St.3d 54, 2009-Ohio-4176, ¶ 15 ("a dismissal grounded on a complaint's 'failure to state a claim upon which relief can be granted' constitutes a judgment that is an 'adjudication on the merits.' As a result, res judicata bars refiling the claim").

{¶ 25} The Regulics' fourth assignment of error relates to the mandamus request that they initiated as relators seeking compensation for the taking of their property that they claim Columbus has effected through actions that they assert have caused or increased the regular flooding of their property. In a more specific allegation, the Regulics aver that "after 2005 and through about 2010, [Columbus] * * * had installed and operated an above ground fiberglass or heavy plastic holding tank to hold excess rainwater in a nearby City park which partially alleviated the frequency and severity of the flooding incidents." Complaint at ¶ 23. The City then "removed such tank from the park and the problem returned to its earlier severity, or even greater severity given changes in climate causing more frequent high intensity rain." *Id.* at ¶ 24. They want the city to initiate an appropriations action to compensate them for "repeated overflow of sewage onto [their property]," which they assert constitutes a taking; they add that "[f]urther overflow of

sewage reasonably may be expected given the allegations * * *, and a further uncompensated taking will result." *Id.* at ¶ 34, 36.

**{¶ 26}** As the trial court recognized, *see* Decision Granting MJP at 10, " '[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged,' " quoting *Doner* at ¶ 53, quoting *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63 (2002). "Under R.C. 2305.09(E), an action for relief on the grounds of a physical or regulatory taking of real property must generally be brought within four years after the cause of action accrued." *Doner* at paragraph one of the syllabus.

**{¶ 27}** After again reviewing the complaint's allegations, including particularly the allegations with regard to the holding tank and its removal (allegations that the trial court had characterized earlier as involving the "design, construction, or update of the sewer system," *see* Decision Granting MJP at 6), the trial court found that the "mandamus claim is * * * barred by the applicable four-year statute of limitations," *id.* at 12. That is because, the trial court explained, the "[c]omplaint does not sufficiently allege any facts regarding any ongoing conduct or control on behalf of [Columbus], and instead only alleges that there have been continuing or ongoing damages." *Id.* at 11. We understand the Regulics' fourth assignment of error to contest this rationale. *See* Appellants' Brief at 17-18 (stating assignment and citing *State ex rel. DeFranco v. Geauga Cty. Bd. of Commrs.*, 11th Dist. No. 2013-G-3143, 2015-Ohio-2811, ¶ 25 for the proposition that generally, "a continuing violation exists when the government's action inflicts accumulating harm").

**{¶ 28}** We note that *DeFranco* involved a one-time act that did not inflict accumulating harm or change the nature or degree of the alleged take over time: "relators' property was not subject to a continuing violation." *Id.* at ¶ 26 (with summary judgment granted to respondent). It did not demonstrate the point that we think the Regulics attempt to make. But the Supreme Court's decision in *Doner*, as cited by the trial court in the mandamus section at page 14 of its decision and by Columbus in opposing the fourth assignment of error, *see* Appellees' Brief at 22, 24, 25, is much more on point.

**{¶ 29}** *Doner* instructed: "When an act carried out on the actor's own land causes continuing damage to another's property and the actor's conduct or retention of control is of a continuing nature, the statute of limitations is tolled." 2011-Ohio-6117 at paragraph

two of the syllabus. The only factual recitations in the Regulics' complaint (as read with all reasonable inferences drawn in favor of the nonmoving Regulics) that relate to an allegedly harmful act carried out on the city's own land involve the removal of the holding tank (assertedly from a "City park," *see* Complaint at ¶ 23) that purportedly caused flooding of the Regulics' house to return to earlier levels or reach "even greater severity," *id*. at ¶ 24. But that allegation seems to us sufficient under the generous standard that obtains in review of a motion for judgment on the pleadings to allow for factual development of the claim (and of statute of limitations calculations) rather than providing for immediate dismissal.

{¶ 30} Columbus argues that the Regulics "do not allege continuing acts or control on the part of the City to toll the statute of limitations," Appellees' Brief at 25. While acknowledging the allegation that "the City * * * removed a storm-water holding tank from a nearby park in 2010," Columbus insists that "[o]ther than the fact that the City owns the sewer systems, Appellants fail to allege any facts showing continuing conduct or control on the part of the City that would toll the four-year statute of limitations." *Id*. at 26. But as the city's language here suggests, the Regulics do allege ongoing city control over the sewer system for which the holding tank, the trial court found, had according to the pleadings been part of the "design, construction or update." Decision Granting MJP at 6; Complaint at ¶ 4 ("Columbus is the provider of * * * sanitary sewer and storm sewer services to the subject Property") and ¶ 5 (Columbus "owns and operates and has maintenance obligations for the infrastructure of the Subdivision").

{¶ 31} *Doner* affirmed application against the government of the general principles that when an owner acts on his own land to direct force against the property of another without that other person's permission, he can be liable in damages, and that if such force (including flooding) " 'is continued by the act of such owner and actor * * * as a continuing trespass * * * each additional damage thereby caused * * * is an additional cause of action; and, until such continued trespass * * * ripens into and becomes a presumptive right and estate * * * [the other] may bring his action.' " *Doner* at ¶ 39 (citation omitted), ¶ 45 ("[t]here is no logical rationale for refusing to apply this rule to takings cases and [the] R.C. 2305.09(E) [limitations period]." *Doner* further quoted *United States v. Dickinson*, 331 U.S. 745, 749 (1947) (" 'when the Government chooses not to condemn land but to bring

about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really "taken" ' "). *Id*. at ¶ 48.

{¶ 32} *Doner* went on to counsel that "[i]n eminent-domain cases involving claims of government-induced flooding, the claimant establishes a taking by proving that (1) the flooding is either intended by the government or is the direct, natural, or probable result of government-authorized activity and (2) the flooding is either a permanent invasion or creates a permanent liability because of intermittent, but inevitably recurring, overflows." *Id*. at ¶ 65. We are not called upon to assess, nor could we assess at this juncture, whether the Regulics can adduce proof to meet these intent and significance requirements. We conclude only that under the standards that guide us in review of a grant of a motion for judgment on the pleadings and in light of Ohio's notice pleading system, the Regulics' allegations regarding the holding tank matter are sufficient to require further proceedings at the trial court on the mandamus claim.

{¶ 33} We sustain the Regulics' fourth assignment of error to that extent.

{¶ 34} Having overruled the first, second, and third assignments of error, and having sustained in part the fourth assignment, we affirm the judgment of the Franklin County Court of Common Pleas in part (including with regard to its dismissal of the Regulics' negligence claims), reverse it in part (with regard to the mandamus claim to the extent described above), and remand the matter for further proceedings consistent with this decision.

*Judgment affirmed in part, reversed in part;*
*and cause remanded.*


KLATT and JAMISON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____